UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**MANDATE**

SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United Stated Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 6th day of August two thousand and four.

Present:   ROSEMARY S. POOLER,
           ROBERT D. SACK,
           REENA RAGGI,
                    Circuit Judges.

---

BIRD PEAK CORPORATION, ECOLAKE CORPORATION,
and ALEARDO CEPPI,

                    Plaintiffs-Appellants,

          -v-                                                (03-9255)

LAWYERS TITLE INSURANCE CORPORATION,

                    Defendant-Appellee.

---

Appearing for Plaintiffs-Appellants: Henry C. Winiarski, Jr., Hartford, CT.

Appearing for Defendant-Appellee: Jonathan S. Bowman, Bridgeport, CT.

       Appeal from the United States District Court for the District of Connecticut (Eginton, Senior District Judge).

       ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,

ISSUED AS MANDATE: 8/31/04

AND DECREED that the judgment of said District Court be and it hereby is **AFFIRMED**.

This diversity action arises from a title insurance policy issued in connection with the purchase in 1993 of a 400-acre tract of land in Salisbury, Connecticut, known as Bird Peak ("the Property"). The contract to purchase was made between IPPEC Corporation, a closely held corporation created by the Ceppi family, and the New Milford Savings Bank. Prior to closing, IPPEC assigned its rights to the Property to two other closely held corporations created by the Ceppi family – Bird Peak Corporation and Ecolake Corporation – and to Aleardo Ceppi as an individual. The Ceppis obtained title insurance from Lawyers Title Insurance Corporation ("LTIC"). LTIC issued three policies – one each for Bird Peak Corporation, Ecolake Corporation and Aleardo Ceppi – which together provide title insurance in the amount of $639,000.00.

In 1994 the Ceppis were sued in Connecticut state court by a homeowners' association which claimed title to a road running across the Property. It is undisputed that LTIC defended this litigation on the Ceppis' behalf from the outset of the litigation until its conclusion in 2001. The instant action alleges that the litigation "destroy[ed] the plaintiffs' . . . ability to improve the physical access to the . . . Property," thus making development of the Property "prohibitively expensive."

Prior to answering the instant complaint, LTIC filed a motion to dismiss or stay the action in favor of arbitration. The motion was based upon the following arbitration clause, which was contained in each of the standard form insurance policies issued by LTIC:

> [E]ither the Company or the insured may demand arbitration . . . . Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. . . .

The motion was assigned to a magistrate judge, who held a brief evidentiary hearing on July 23, 2003. The plaintiffs called two witnesses: Steven Winkler, an LTIC attorney, and Dario Ceppi, Aleardo Ceppi's brother, who, according to his testimony, "acted on behalf of the family in signing the original agreement, in negotiating changes to the agreement and finally in closing the transaction" involving the Property. In a recommended ruling, dated August 25, 2003, the magistrate judge concluded that the motion to dismiss should be granted and that the motion to stay should be denied as moot. The plaintiffs filed objections to the recommended ruling, which was adopted by the district court on September 8, 2003.

We review a district court's determination of arbitrability de novo." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir. 2004). None of the three arguments posited by the plaintiffs establishes that arbitration is not appropriate here.

**1. Assent to Arbitration Provision.** The plaintiffs argue "that they never assented to the arbitration provision in question and, since assent is necessary to the formation of a contract, ... an agreement to arbitrate was never made by the parties." Indeed, the plaintiffs contend that they "had no actual knowledge of the existence of the clause until the time they commenced [the instant] suit."

These arguments are meritless. The plaintiffs accepted the policies issued by LTIC which contain the arbitration clause, retained the policies without objection for almost a decade before the instant action was filed, and accepted benefits thereunder, particularly LTIC's defense of the title litigation on the plaintiffs' behalf. There is no authority for the proposition that the arbitration clauses only became effective once the plaintiffs have specifically assented to the clauses themselves. Further, while the plaintiffs contend that Winkler "should have disclosed the presence of the arbitration clause in its policies," they cite no authority for the proposition that he had any duty to do so. Dario Ceppi's testimony that Winkler had some such duty because "he acted as counsel to the buyers" is belied by the fact that Ceppi also testified that Winkler "was certainly the agent for [LTIC]." Dario Ceppi is himself an attorney with a specialty in contract law. There is no question that he could be charged with at least constructive knowledge of the arbitration clauses' presence in the policies.

Moreover, as LTIC correctly notes, the plaintiffs are in a poor position to assert that the arbitration clause should not be enforced when they have "accepted the benefits of the policies for almost nine years while" LTIC defended the litigation involving title to Bird Peak on behalf of the plaintiffs. As the magistrate judge observed, "the argument that the arbitration provisions are unenforceable is belied by [the] plaintiffs' own complaint, which asserts several claims based on the assumed enforceability of the policies of which the arbitration provisions are a part."

**2. Connecticut Statute of Frauds.** The Connecticut statute of frauds, CGS § 52-550(a), requires that "any agreement for the sale of real property or any interest in or concerning real property," must be "made in writing and signed by the party" against whom enforcement of the agreement is sought. The plaintiffs argue that "[i]f a title insurance policy is an 'agreement for the sale of real property' within the meaning of the statute, then the plaintiffs cannot be compelled to arbitrate since, as the parties sought to be charged with an obligation to arbitrate, they did not sign the agreement."

The plaintiffs cite no relevant authority for the proposition that a title insurance policy is a contract for the sale of real property because, as they themselves admit, "to their knowledge, none exists." But we need not decide this question because, as LTIC points out, "[w]hen there has been conduct which amounts to part performance under an agreement, the agreement is enforceable notwithstanding the fact that it does not comply with the requirements of the statute of frauds." There has certainly been part performance here because, inter alia, the plaintiffs accepted LTIC's counsel in the Bird Peak title litigation over the course of several years. Thus, as the magistrate judge opined, "there has been partial performance under these policies, removing them from the statute of frauds even if it did apply."

**3. Scope of the Arbitration Clause.** The arbitration clause provides that "[a]rbitrable

3